

**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Robert M. Vrana**
P 302.571.6726
rvrana@ycst.com

May 16, 2025

**VIA CM/ECF**
Hon. Stephanos Bibas
United States District Court
18614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

      Re:    *Richey v. Showtime Networks Inc.*, C.A. No. 24-cv-134-SB

Dear Judge Bibas:

      This firm represents Defendant Showtime Networks Inc. ("Showtime") in the above-captioned action. We write to respectfully request a premotion conference regarding Showtime's anticipated motion to dismiss the Second Amended Complaint (the "SAC"), D.I. 24, filed by Plaintiff Sheila Richey ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's *third* attempt to plead a claim for unjust enrichment against Showtime fails as a matter of law because she has (again) failed to plead the most basic elements of her claim. Namely, as this Court found in dismissing Plaintiff's First Amended Complaint, "she has not alleged that *she* enriched Showtime." D.I. 21 at 2 (emphasis in original). The same is true of the SAC. And this failure alone defeats Richey's claim under New York law, which applies here because—as Showtime's principal place of business—it is the state with the most significant interest in this dispute. The SAC also fails under Delaware law because—in addition to not pleading that Plaintiff enriched Showtime—the SAC also does not plausibly allege that Showtime knowingly induced nonparty Georgette Jones ("Georgette") to breach the 2019 non-disparagement agreement that gives rise to Plaintiff's claim. Accordingly, the SAC should be dismissed with prejudice. Moreover—since Plaintiff's claim lacks any substantial basis in law—Showtime should also be awarded its reasonable costs and attorneys' fees as *required* under New York's anti-SLAPP law. *See* N.Y. Civil Rights Law §§ 70-a(1)(a), 76-a.

      **I. Background.** This action arises from a 2022 award-winning docudrama called *George and Tammy* (the "Series"). SAC ¶ 1. The Series was adapted from a 2011 book by Georgette Jones ("Georgette") about her parents, country music icons George Jones and Tammy Wynette.[1] *Id.* ¶¶ 2-3. Georgette optioned her book for television in 2014 and, pursuant to that agreement, she is credited in the Series as a "consulting producer." *See id.* ¶ 6. While the SAC reads as a defamation action, it only asserts a single claim against Showtime for unjust enrichment. *Id.* ¶ 1. Plaintiff predicates this claim on the fact that unbeknownst to Showtime, Georgette signed a non-disparagement agreement in 2019 (the "2019 NDA"), after publishing the 2011 book. Under the 2019 NDA, Georgette agreed not to make any statements critical of Plaintiff's late husband,

---

[1] Tammy Wynette was married to George Jones from 1969-75, and George Richey from 1978-98. George Richey was married to Plaintiff from 2001 until his death in 2010.

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square | 1000 North King Street | Wilmington, DE 19801
P  302.571.6600    F  302.571.1253    YoungConaway.com

George Richey. *Id.* ¶¶ 5, 9. Plaintiff alleges that the Series depicts George Richey as "the villain." *Id.* ¶ 7. Plaintiff was not a party to the 2019 NDA, but contends that it was executed for her benefit, because it was explicitly premised on Plaintiff dismissing an earlier libel suit against Georgette. *Id.* ¶ 21. Based on the 2019 NDA, Plaintiff now asks this Court to award her a percentage of Showtime's profits from the Series, because the portrayal of the public figure George Richey somehow "belonged to [Plaintiff] by virtue of the [2019 NDA]" (a claim not supported by any provision of the agreement), and "Showtime's use of this ill-gotten information for its profit constitutes unjust enrichment." *Id.* ¶ 29.

By Order dated March 18, 2025, the Court granted Showtime's motion to dismiss the First Amended Complaint (under Delaware law). D.I. 21. It held that Plaintiff failed to plead that she enriched Showtime, and that she did not plausibly plead that Showtime knowingly induced Georgette's breach of the 2019 NDA. *Id.* at 2, 7-12. The SAC fails for the same reasons.

**II. New York Law Applies.** In its prior motion to dismiss, Showtime accepted Plaintiff's contention that her claim was controlled by the law of Delaware (the state of Showtime's incorporation). But as the Court observed, Plaintiff's claim could also potentially be controlled by the law of Texas (Plaintiff's domicile), or New York (Showtime's corporate headquarters and principal place of business).[2] *See* D.I. 21 at 4. An actual conflict exists between the laws of these jurisdictions, because New York is the only relevant state that has a broad anti-SLAPP law, which, among other things, *requires* that a defendant be awarded its reasonable costs and attorneys' fees upon a finding that the plaintiff's claim lacks any "substantial basis in law." *See* N.Y Civil Rights Law 70-a(1)(a). Also, unlike Delaware law, New York law has no exception that would allow recovery from a nonparty to a contract on an unjust enrichment theory if the nonparty to the contract knowingly induced a breach of the agreement. *See, e.g.*, *Ahmed v. Cigna Health Mgmt., Inc.*, No. 23-CV-8094 (AS), 2024 WL 3345819, at *6-7 (S.D.N.Y. July 8, 2024) (collecting cases).[3]

"Delaware courts apply the 'most significant relationship' test from the Second Restatement of Conflicts to determine choice of law in tort claims." *Slingshot Techs., LLC v. Acacia Rsch. Corp.*, No. N23C-11-166 EMD CCLD, 2024 WL 3220334 (Del. Super. Ct. June 20, 2024) (quoting *State Farm Mut. Auto. Ins. Co. v. Patterson*, 7 A.3d 454, 457 (Del. 2010)). That

---

[2] Numerous courts have held that Texas does not recognize a separate and distinct cause of action for unjust enrichment. *See, e.g.*, *Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) (citing *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004)). Other Texas courts have held that unjust enrichment may be a cognizable theory on which to recover restitution, but it requires the plaintiff to "allege fraud, duress, or undue advantage." *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex. App. 1999). Since Plaintiff has not alleged fraud, duress, or undue advantage, her claim also fails under Texas law.

[3] To the contrary, New York courts have repeatedly held that the First Amendment precludes liability against media companies for inducing a third party to breach a contractual obligation where the broadcaster's motive in communicating with that third party is "intended to foster public awareness or debate." *Huggins v. Povitch*, No. 131164/94, 1996 WL 515498, at *9 (N.Y. Sup. Ct. Apr. 19, 1996). *See also* D.I. 16 at 17-18 (collecting cases).

test considers various factors, but where—as here—an unjust enrichment claim "does not stem from any relationship between the parties, the factor that is usually of the greatest importance is the place where the benefit of enrichment was received." *Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 295 F. Supp. 2d 430, 434–35 (D. Del. 2003) (internal quotation marks and citation omitted). In the case of a corporate defendant, the place of enrichment will normally be the defendant's principal place of business. *Id.* (applying the law of the state where the defendant's corporate headquarters was located). Since New York is Showtime's "principal place of business," SAC ¶ 13, this Court should apply New York law. *See also Evans v. TheHuffingtonPost.com, Inc.*, No. 22-1180-GBW, 2023 WL 5275383, at *5 (D. Del. Aug. 16, 2023) (finding that New York has a significant interest in protecting its media companies and applying New York's anti-SLAPP law), *aff'd*, No. 23-2698, 2024 WL 3949070 (3d Cir. Aug. 27, 2024).

**III. The SAC Fails Under New York Law.** "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 119 (S.D.N.Y. 2023) (citation omitted). Plaintiff has not even attempted to plead the last two elements (and could not plausibly do so). This Court has already found that Plaintiff failed to plead that she enriched Showtime. *See* D.I. 21 at 2. She also cannot plead the third element, which would require that she allege some relationship with Showtime. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (a plaintiff cannot plead unjust enrichment if her relationship with the defendant is "too attenuated"). The connection between the parties is "too attenuated" where the parties "simply had no dealings with each other," *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012), or if there is no "relationship between the parties that could have caused reliance or inducement," *Wildenstein*, 16 N.Y.3d at 182. Here, as alleged in the SAC, Plaintiff and Showtime "simply had no dealings with each other" prior to Showtime receiving Plaintiff's cease-and-desist letter in April 2022. *Rieder*, 19 N.Y.3d at 517–18. Thus, her claim clearly fails under New York law.

Moreover, Plaintiff's claim is governed by New York's anti-SLAPP law, which applies to any action that arises from "any communication in a . . . public forum in connection with an issue of public interest; or . . . any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civil Rights Law § 76-a(1)(a). Thus, the Court should award Showtime its attorneys' fees and costs because Plaintiff's claim plainly lacks any "substantial basis" in law. N.Y. Civil Rights Law § 70-a(1)(a). *See Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 189 S.D.N.Y. 2024) (awarding anti-SLAPP fees on motion to dismiss).

**IV. The SAC Also Fails Under Delaware Law.** In its Order dismissing the First Amended Complaint, this Court left open the possibility that Plaintiff might be able to plead unjust enrichment under Delaware law if she could allege that Showtime facilitated Georgette's breach of the 2019 NDA after receiving Plaintiff's cease-and-desist notice in April 2022. D.I. 21 at 10. The SAC fails to plausibly do so. Instead, Plaintiff simply alleges that the producers asked Georgette to review draft cuts of the Series during post-production. SAC ¶ 102. This falls far short of plausibly alleging that, by doing so, Georgette breached the 2019 NDA, as does Plaintiff's pure speculation that Georgette "offer[ed] feedback on narrative flow, pacing, and character consistency." *Id.* ¶ 103. Since Plaintiff does not plausibly allege that Showtime knowingly facilitated Georgette's alleged breach, she cannot state a claim for unjust enrichment under Delaware law (or the law of any other jurisdiction).

        Respectfully,

        */s/ Robert M. Vrana*

        Robert M. Vrana (No. 5666)

cc:   All Counsel of Record (via ECF)