**BELLEW LLC**  Red Clay Center at Little Falls    Sean J. Bellew, Esq.
2961 Centerville Road, Suite 302   Tel: (610) 585-5900
Wilmington, DE  19808    Email:  sjbellew@bellewllc.com

May 23, 2025

**VIA CM/ECF**
The Honorable Stephanos Bibas
United States District Court
18614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

    Re:    *Richey v. Showtime Networks Inc.*, C.A. No. 24-cv-134-SB

Dear Judge Bibas:

    This firm represents the plaintiff, Sheila Slaughter Richey ("Sheila" or "Plaintiff"), in this matter. By letter dated May 16, 2025, the defendant Showtime Networks Inc. ("Showtime") has requested a pre-motion conference in anticipation of its filing its second motion to dismiss under Fed. R. Civ. P. 12(b)(6).

    **I.**    **North Carolina or Delaware provide the most plausible choice of law.** Delaware has adopted the "most significant relationship" test to resolve choice of law issues, consistent with the Restatement (Second) of Conflict of Laws. Factors include the place where the benefit or enrichment was received, the place where the act conferring the benefit or enrichment was done, and the domicile and place of business of the parties. Where the claim for restitution does not stem from any relationship between the parties, the place where the enrichment was received "will usually be [the contact] of greatest importance with respect to most issues." *In re Rezulin Products Liability Litigation*, 390 F. Supp. 2d 319, 341-42 (S.D.N.Y. 2005). The filming for this series occurred in Wilmington, North Carolina. It was in North Carolina that the "benefit or enrichment" from Georgette was received. In the alternative, and as both parties had assumed prior to Showtime's letter, Delaware, the place of incorporation of Charter Communications, Showtime, and its parent Paramount, could plausibly supply the choice of law. Showtime's assertion that this claim is governed by the law of New York because the benefit was conferred in New York is contrary to fact. During the entire production, the Series was owned by Charter Communications, a Delaware corporation with headquarters in Connecticut and Missouri. Showtime did not acquire the Series until the post-production phase; no benefit was ever conferred in New York.

    **II.**    **Showtime was enriched by Sheila.** This Court dismissed the First Amended Complaint on the grounds that Sheila had failed to allege adequately that Showtime was enriched by the Plaintiff. (Mem. Op. at 7 ("She does not allege that she paid Showtime any money, rendered it any service, gave it anything of value, or had property rights that Showtime violated.")). A deprivation of a plaintiff's property by the defendant, however, constitutes an enrichment from the plaintiff to the defendant. *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) ("Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or *property of another* against the fundamental principles of justice or equity and good conscience.'") (citation omitted) (emphasis added). A contractual entitlement constitutes "property," the deprivation which justifies restitution of ill-gotten profits. *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060,

1062 (Del. 1988) ("The rights arising out of contracts have long been recognized as property rights" that justify restitution of unjust enrichment from the third-party defendant who precluded the plaintiff from enjoying "the full exercise and enjoyment of its rights"). The elements of unjust enrichment under North Carolina law are that the plaintiff conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party. *Paradigm Park Holdings, LLC v. Global Growth Holdings, Inc.*, 914 S.E.2d 20, 27 (N.C. Ct. App. 2025). In North Carolina, "contract rights are property." *Adams v. State*, 790 S.E.2d 339, 344 (N.C. Ct. App. 2016). When it knowingly facilitated Georgette Jones' breach of her non-disparagement agreement with Sheila, Showtime violated Sheila's property rights.

New York law, which Showtime argues supplies the rule of decision, does not differ on these two ubiquitous principles of the law of unjust enrichment. *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018). New York courts follow the Restatement (Third) of Restitution and Unjust Enrichment. *Emergency Physician Services of New York v. United Health Group, Inc.*, 749 F. Supp. 3d 456, 474 (S.D.N.Y. 2024). The Restatement, sections 42 and 44, recognizes claims for unjust enrichment from a defendant "who obtains a benefit by misappropriation or infringement of another's legally protected rights," or who "consciously interfere[s] with a claimant's legally protected interests." A non-party to a contract is liable in unjust enrichment where the nonparty takes a benefit that was the subject of the contract. *Natura Dev. N.V. v. HEH Advisors LLC*, No. 19-cv-1797, 2020 WL 550661, at *6 (S.D.N.Y. Feb. 4, 2020).

Yet New York law is less charitable toward Showtime than Delaware law: New York does not require that the defendant in an action for unjust enrichment have acted "wrongfully" at all. "Unjust enrichment … does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.'" *Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978) (internal citations omitted). Thus, should New York law apply, as Showtime wishes, the entire discussion in Showtime's letter of its purported innocence in this whole matter is now quite beside the point. Showtime knew, long before it completed its post-production work, months before its initial broadcast, and even presently as it continues its broadcasts, that the Series was derived, in substantial part, from Georgette's violation of her non-disparagement agreement. Showtime knew because Sheila, in a letter from counsel, told them, in no uncertain terms. Instead of making reasonable edits to its Series to accommodate Sheila's stated and justifiable desire to protect her contractual rights, Showtime instead stalled her, refused her repeated requests for a meeting, and assured her falsely that she would "be pleased" with the Series depiction of her late husband, all while it knew that the Series portrayed George Richey as a manipulative, woman-beating, drug-pushing villain.

**III.  Showtime "knowingly facilitated" Georgette's breach.** Under Delaware law, which Showtime seeks to abandon, third parties to a contract are liable for unjust enrichment if they "knowingly facilitated" breach of the agreement. *Chumash Capital Investments, Inc. v. Grand Mesa Partners, LLC*, No. N23C-07-209, 2024 WL 1554184, at *17 (Del. Super. April 10, 2024). North Carolina requires only that the defendant "consciously accept the benefit." This Court dismissed the First Amended Complaint because the allegations failed to show that the breach of the non-disparagement agreement "happened while the show was being made – as Georgette was goading its writers to pile on unflattering scenes or coaxing actors to play Richey more darkly."

The Honorable Stephanos Bibas
May 23, 2025

(Mem. Op. at 8). The Second Amended Complaint adds over forty-five paragraphs that allege facts showing this precise conduct. Georgette was intimately involved in the pre-production, production, and post-production phases. She even made a "cameo" in the movie. Throughout, Georgette did in fact urge a more unflattering portrayal of George Richey, adding substantially to the depictions made in her book. This Court's Memorandum Opinion also stated that Showtime needed to know about the agreement during the making of the series. "For its part, Showtime would have facilitated this breach by hiring Georgette and succumbing to her vindictive influence. So to have facilitated the breach *knowingly*, Showtime would have needed to know about the non-disparagement agreement while it was making the show." (Mem. Op. at 8 (italics in original)). All of these requirements are now met. Showtime hired Georgette; by the admissions of its showrunner and several lead actors, Georgette influenced the portrayal of George Richey; Showtime knew that Georgette was party to a non-disparagement agreement at least as early as April 2022, at the outset of the post-production phase of the series, if not sooner.[1] When it received the letter, Showtime was in the "wrap-up" phase of its shooting of scenes and commencing "post-production," an industry term of art that includes editing the film into a linear storyline. Showtime was fully engaged in "making the show" throughout.

**IV.   New York's anti-SLAPP law does not apply in federal court.** Showtime's strained and belated invocation of New York law is obviously animated by its desire to invoke New York's anti-SLAPP law to threaten Sheila with liability for Showtime's legal bill. N.Y. Civil Rights Law § 70-a *et seq.* When deciding state-law claims, federal courts are to apply state substantive law and federal procedural law. *E.g.*, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The "substantial basis" standard established in New York's anti-SLAPP law is inapplicable in federal court. It "conflicts with the standards under Federal Rules of Civil Procedure 12 and 56" and impermissibly "imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure." *See, e.g., Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 431-32 (S.D.N.Y. 2021).[2] In addition, an anti-SLAPP motion at this stage is not timely: this case has been pending for over a year, significant litigation resources have been expended, and the SAC raises no new claims: the time for filing the motion dates from the original complaint and has long expired. Showtime's threat is also in the wrong form. A defendant may seek costs and fees under New York's anti-SLAPP law only by way of "an action, claim, cross claim or counterclaim," N.Y. Civil Rights Law § 70-a, and not on a motion to dismiss. *See Lindell v. Mail Media Inc.*, No. 21-CV-667, 2021 WL 5910000, at *7 (S.D.N.Y. Dec. 10, 2021). This is no mere detail. Requiring the defendant to bring a claim or counterclaim shifts the burden of proof. Should Showtime persist in its threat to burden Sheila with its legal costs, it will have to establish that Sheila's claim "was commenced or continued without a substantial basis in fact." N.Y. Civil Rights Law § 70-a(1)(a). A Second Amended Complaint bristling with over sixty-eight pages of factual allegations and twenty pages of exhibits evidences that substantial basis.

---

[1]   Discovery may reveal that Showtime knew about Georgette's NDA even earlier.
[2]   The substantive changes to the tort of defamation that were part of New York's anti-SLAPP legislation are not at issue here. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 177-78 (S.D.N.Y. 2024) (standard of fault is substantive and thus applicable in federal court).

The Honorable Stephanos Bibas
May 23, 2025

                                      Sincerely,

                                      */s/ Sean J. Bellew*

                                      Sean J. Bellew (4072)

cc:     All Counsel of Record (email)