## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHEILA SLAUGHTER RICHEY, in her individual capacity and in her capacity as Executrix of the Estate of George Richey, deceased, | No. 1:24-cv-00134-SB |
| Plaintiff, | |
| v. | |
| SHOWTIME NETWORKS INC., a Delaware corporation, | |
| Defendant. | |

## PLAINTIFF SHEILA SLAUGHTER RICHEY'S
## MEMORANDUM OF LAW IN SUPPORT OF SHEILA SLAUGHTER RICHEY'S
## MOTION FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY
## RELATING TO CHOICE OF LAW

OF COUNSEL:

Todd V. McMurtry (admitted *pro hac vice*)
J. Will Huber (admitted *pro hac vice*)
HEMMER WESSELS MCMURTRY PLLC
250 Grandview Dr., Ste. 500
Ft. Mitchell, KY 41017
Phone: (859) 344-1188
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

Sean J. Bellew (No. 4072)
BELLEW LLC
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808
Phone: (302) 353-4951
sjbellew@bellewllc.com

*Attorneys for Plaintiff,
Sheila Slaughter Richey*

Dated: June 20, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 1

CONCISE STATEMENT OF THE FACTS ................................................................................ 4

ARGUMENT ................................................................................................................................ 5

    I.     When Did Georgette Confer the Unjust Enrichment? .............................................. 6

    II.    At What Phase of Production, and Where, Was the Series at the Time Georgette
           Conferred the Enrichment? ..................................................................................... 7

    III.   When Did Showtime or King Street First Learn About Georgette's Agreement
           and Her Breach of It? .............................................................................................. 7

    IV.   What is the Relationship Between Showtime and King Street? ............................... 7

CONCLUSION ............................................................................................................................. 8

SIGNATURE PAGE .................................................................................................................... 8

ENDORSEMENT PURSUANT TO LOCAL RULE 7.1.1 .......................................................... 8

CERTIFICATE OF SERVICE .................................................................................................... 9

## TABLE OF AUTHORITIES

Pursuant to Local Rule 7.1.3(a)(c)(1)(B), this memorandum does not contain any citations to cases, statutes, rules, textbooks, or other authorities.

## NATURE AND STAGE OF THE PROCEEDINGS

This case involves a claim for unjust enrichment arising out of Defendant Showtime Networks, Inc.'s ("Showtime's") production and broadcast of the series "George & Tammy" (the "Series") on its streaming services. The Second Amended Complaint ("SAC") alleges that Showtime benefitted in that production from the breach of a non-disparagement agreement (the "Agreement") of its agent or employee, Georgette Jones ("Georgette"). The Agreement obligated Georgette "not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices or conduct of … George Richey." (*E.g.*, SAC ¶ 5 Ex. 1). Despite that Agreement, Georgette was hired as a consulting producer for the Series. (*Id.* at ¶ 6).

Following this Court's Order dated March 18, 2025 (D.I. 22), Plaintiff Sheila Slaughter Richey ("Sheila") filed a Second Amended Complaint by stipulation. (D.I. 23). This Court held a premotion conference on May 27, 2025. After that conference, the Court entered a text order on May 27, 2025, permitting Sheila to serve interrogatories limited to choice of law. Sheila served Showtime with eleven interrogatories limited to choice of law on June 6, 2025. Showtime served objections and responses to the interrogatories on June 13, 2025. A true and accurate copy of Showtime's responses to the interrogatories is attached as **Exhibit 1.**

Now, pursuant to the Court's Oral Order (D.I. 27), Sheila files this Motion seeking leave to conduct limited follow-up discovery. Specifically, Sheila seeks leave to serve Showtime with document requests, to conduct the Fed. R. Civ. P. 30(b)(6) deposition of King Street Productions, Inc. ("King Street"), and to conduct the deposition of Georgette Jones.

## SUMMARY OF ARGUMENT

1.       In its oral ruling on May 27, 2025, this Court authorized Sheila to conduct discovery, limited to interrogatories, for the purpose of determining the appropriate choice of law

1

for this matter. Showtime has argued for application of New York law, where it alleges the post-production (editing) work was done on the Series; Sheila has argued for North Carolina law to supply the rule of decision, where most of the filming of the Series took place.

2.      During the premotion conference, the Court stated that one principal factor in determining choice of law in an unjust enrichment case is in what state or location was that benefit conferred. (Recording of Premotion Conference at 00:03:33-00:03:50). As the Court noted, the location of the unjust enrichment will depend on its timing: in which particular production activities was Showtime (and/or King Street Productions, Inc.) engaged, and where, when the unjust enrichment was first conferred; relatedly, depending on the decision respecting choice of law, it may matter when Showtime (or King Street) first learned of the non-disparagement agreement. (*Id.* at 00:07:02-14). The Court authorized discovery to uncover the "specifics of the post-production work" and the "mechanics of taking the footage from North Carolina and Tennessee and turning it into the show." (*Id.*)

3.      In its answers to Sheila's interrogatories, attached hereto as **Exhibit 1**, Showtime for the first time in this litigation indicates that it never actually acquired the rights to the Series, but rather its "affiliated corporate entity, King Street Productions, Inc.," ("King Street") obtained the rights on July 28, 2020. (Showtime's Response to Interrogatory No. 8). Showtime states that Showtime and King Street share the same corporate parent company, Paramount Global ("Paramount"). (Showtime's Response to Interrogatory No. 3; Showtime's Memo in Support of Motion to Dismiss, D.I. 16, PageID# 192).

4.      Showtime's revelation regarding King Street's ownership rights conflicts with other representations it has made to this Court. Earlier in this litigation, Showtime defined Mad Chance, Inc., Brolin Productions, and Georgette Jones as "Showtime's predecessors in interest."

2

(Declaration of Elizabeth McNamara at ¶ 3, D.I. 17, PageID# 210), suggesting that Showtime itself acquired the rights to the Series. Showtime has referred to itself and its parent, Paramount, interchangeably in this litigation. (Showtime's Memo in Support of Motion to Dismiss, D.I. 16, PageID# 194 (stating "Paramount's [response] letter" is the same as "Showtime's [response] letter"). Showtime stated it was responsible for "tell[ing] the story." (*Id.* at PageID# 207). Showtime calls the Series, "Showtime's award-winning docudrama[.]" (*Id.* at PageID # 189).

5.    Now, however, Showtime states King Street, not Showtime, acquired the rights and suggest King Street was also responsible for the production and release of the Series. Respecting the Series' pre-production, production, and post-production schedules, Showtimestates it "does not have any knowledge regarding the awareness [of the non-disparagement agreement] of its predecessors in interest." (Showtime's Response to Interrogatory No. 1).

6.    To determine when the unjust enrichment occurred, it is necessary to determine when Showtime, or its affiliated company King Street, first received the unjust enrichment from Georgette's breach of her Agreement, in which state or states the Series was being produced at that time, and at what date King Street first became aware of the Agreement.

7.    Consequently, in order to determine when the unjust enrichment occurred, it is necessary to conduct the following additional discovery:

(a)    serve requests for production on Showtime for its or King Street's contract or agreement with Georgette and its documents with which it obtained ownership of the Series;

(b)    conduct a Rule 30(b)(6) deposition of King Street Productions, Inc., and,

(c)    conduct the deposition of Georgette Jones.

8.    In order to minimize litigation expenses, Sheila would take each of these

3

depositions via Zoom.

9.    These depositions would be limited to matters directly relevant to the choice-of-law issue: they would determine in what state the principal production of the Series was occurring when Georgette first enriched King Street through her breach of her non-disparagement agreement.

10.    Thus, where the benefit was conferred, and thus the applicable choice of law, depends on several facts: at what point in the production process was Georgette first hired; what were her contributions to the Series at that time and subsequently; what did Showtime or its affiliates know about Georgette's agreement and when.

## CONCISE STATEMENT OF THE FACTS

Georgette signed the Agreement in 2019. (SAC ¶ 5 (D.I. 24, PageID# 329)). Approximately one year later, Showtime and/or King Street hired Georgette as a consulting producer for the Series. (*Id.* ¶ 43 (D.I. 24, PageID# 345)). In that role, Georgette contributed to the making of the Series. (*Id.*). Showtime, according to itself, received notice of the Agreement on April 20, 2022, while the Series was undergoing the post-production phase and each of the six episodes was being edited. (Showtime's Response to Interrogatory No. 1). However, Showtime states that it "does not have knowledge of its predecessors-in-interest." (*Id.*). The date King Street received notice of the Agreement, and the status of the production schedule at the time they received notice is necessary to determine the applicable choice of law and jurisdiction with the most significant relationship. Showtime is incorporated in Delaware. (SAC ¶ 13 (D.I. 24, PageID# 333)). Showtime's principal place of business is in New York. (*Id.*). Sheila is domiciled in Texas. (*Id.* ¶ 12 (D.I. 24, PageID# 333)). The bulk of the filming was conducted in North Carolina. (*Id.* ¶ 66 (D.I. 24, PageID# 356)).

4

## ARGUMENT

To determine where Showtime was enriched, this Court must determine: where were the writers located when they wrote the script of the Series; what contributions did Georgette make to all phases of the making of the Series, including writing, filming, and editing; and where was she located when she made those contributions.

Showtime has impliedly conceded that New York is not a proper choice of law. By its own admission, the unjust enrichment did not occur during the post-production phase, which Showtime has stated occurred in New York. According to Showtime, Georgette's involvement in this third and final stage, at which time Showtime was now the owner of the Series, was minimal. "Showtime states that Georgette made no substantive contribution to the post-production phase of the Series." More specifically, Showtime clarifies Georgette's very limited involvement in the post-production phase. "Georgette's only involvement with respect to post-production of the Series was that on November 2, 2022, she was sent credentials for accessing electronic versions of the finished episodes." Even any potential for Georgette to confer an enrichment during the post-production phase in New York was precluded. "At the time [of post-production in New York] that Georgette was provided access to view these cuts of the Series, the Series was 'locked' (*i.e*, in its final form and no further changes were made to any episodes). Consequently, by Showtime's own admissions, the unjust enrichment flowing from Georgette's breach of her non-disparagement agreement did not take place in New York. New York is not plausibly "the place where the unjust enrichment occurred." Instead, the enrichment had to occur earlier, during the production phase, which Showtime has conceded did not take place in New York.

The purpose of this additional discovery is to determine when Georgette did confer that benefit, at what phase and location was production when she conferred it, and what did the

recipient of the enrichment, be it Showtime or its affiliated company King Street, know about Georgette's breach of her Agreement.

## I.    When Did Georgette Confer the Unjust Enrichment?

This Court has stated that the principal consideration in resolving the choice of law in this case is where (in what state) was the benefit conferred. To resolve this issue, it is necessary to determine at what point in the production process Georgette conferred that benefit. She was hired as a consultant to the Series before script writing (part of the "pre-production phase) even began. She was also in contact with the "showrunner" and lead actors of the Series during its filming ("production phase"). She was also involved during the editing of the Series (the "post-production phase"). Her involvement led to her crediting as a "Consulting Producer" to the Series.

Georgette's non-disparagement agreement obligated her "not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices or conduct of . . . George Richey, in perpetuity." The SAC alleges that Georgette did in fact make statements and cause or encourage others to make statements that were in violation of her Agreement. The SAC alleges that Georgette's violation of her Agreement unjustly enriched Showtime by providing it with material and information that disparaged George Richey, including his depiction as a violent, drug-pushing, cheating man who ruined the career of a famous performer.

To determine at what point in time Georgette did in fact confer this unjust enrichment, and where she conferred it, it is necessary to depose her. It is also necessary to take the Rule 30(b)(6) deposition of King Street, which company Showtime now alleges owned the Series during its pre-production and production phases.

## II.    At What Phase of Production, and Where, Was the Series at the Time Georgette Conferred the Enrichment?

In order to resolve the choice of law issue, once the timing of Georgette's breach of her Agreement is determined, it will be necessary to determine in what State production was occurring at that time. According to Showtime's responses to interrogatories, the pre-production writing occurred in scattered locations (during Covid's work-from-home era). The majority of filming took place on location in North Carolina, and to a lesser extent in Tennessee. Regarding post-production, Showtime has conceded that Georgette did not confer the benefit during the post-production editing in New York.

Accordingly, it will be necessary to correlate the then-current location of production with the time of Georgette's breach. For example, if Georgette's conferral of the benefit occurred at a point in time when the Series was being filmed in North Carolina, then North Carolina will be the location where the unjust enrichment occurred. The requested depositions of both Georgette and King Street will provide this information. Those depositions will be limited to this issue.

## III.    When Did Showtime or King Street First Learn About Georgette's Agreement and Her Breach of It?

The law of unjust enrichment remains relatively undeveloped, at least as compared to tort law, its mirror-image. Consequently, in some states, no unjust enrichment occurs unless the defendant knows that it is receiving an unjust enrichment. The defendant's knowledge of the Agreement and its breach may thus be part of the equation in determining when the unjust enrichment occurred. The requested depositions of both Georgette and King Street will provide this information, should it become relevant to the choice of law.

## IV.    What is the Relationship Between Showtime and King Street?

In its Responses to Interrogatories, Showtime has for the first time disclaimed knowledge of and responsibility for any unjust enrichment to the Series that occurred prior to its acquisition

7

of the Series, instead pointing the finger at its affiliated company, King Street. In order to verify and better define this affiliation, and to assign responsibility accurately, Sheila requests from this Court permission to file document requests to Showtime that would provide evidence of this relationship and that would show transfer and ownership of the Series.

## CONCLUSION

For the foregoing reasons, Plaintiff Sheila Slaughter Richey's Motion for Leave to Conduct Additional Discovery should be granted.


OF COUNSEL:

| | |
|---|---|
| Todd V. McMurtry (admitted *pro hac vice*) | /s/ Sean J. Bellew_____ |
| J. Will Huber (admitted pro hac vice) | Sean J. Bellew (No. 4072) |
| HEMMER WESSELS MCMURTRY PLLC | BELLEW LLC |
| 250 Grandview Dr., Ste. 500 | 2961 Centerville Rd., Ste. 302 |
| Ft. Mitchell, KY 41017 | Wilmington, DE 19808 |
| Phone: (859) 344-1188 | Phone: (302) 353-4951 |
| tmcmurtry@hemmerlaw.com | sjbellew@bellewllc.com |
| whuber@hemmerlaw.com | |
| | |
| | *Attorneys for Plaintiff,* |
| | *Sheila Slaughter Richey* |

Dated: June 20, 2025


## ENDORSEMENT PURSUANT TO LOCAL RULE 7.1.1

The undersigned hereby confirms, pursuant to Local Rule 7.1.1, that counsel have conferred regarding the relief requested in this motion, and Showtime does not consent to the requested relief.

/s/ Sean J. Bellew_____
Sean J. Bellew (No. 4072)

8

## CERTIFICATE OF SERVICE

I, Sean J. Bellew, hereby certify that on June 20, 2025, a copy of the foregoing

Memorandum was served via email upon the following:

Elena C. Norman
Robert M. Vrana
Daniel M. Kirshenbaum
YOUNG CONAWAY STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Phone: (302) 571-6600
enorman@ycst.com
rvrana@ycst.com
dkirshenbaum@ycst.com

Elizabeth A. McNamara
Adam I. Rich
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
lizmcnamara@dwt.com
adamrich@dwt.com

*Attorneys for Defendant,*
*Showtime Networks Inc.*

/s/ Sean J. Bellew
Sean J. Bellew (No. 4072)

9