IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHEILA SLAUGHTER RICHEY,
in her individual capacity and in her ca-
pacity as Executrix of the Estate of
George Richey, deceased,

$\qquad$ *Plaintiff,*

$\qquad$ No. 1:24-cv-00134

$\qquad$ v.

SHOWTIME NETWORKS INC.,

$\qquad$ *Defendant.*

Sean J. Bellew, BELLEW LLC, Wilmington, Delaware; John W. Huber, Todd McMurtry, HEMMER WESSELS MCMURTRY PLLC, Fort Mitchell, Kentucky,

*Counsel for Plaintiff.*

Elena C. Norman, Daniel Marc Kirshenbaum, Robert M. Vrana, YOUNG, CONAWAY, STARGATT & TAYLOR LLP, Wilmington, Delaware; Adam I. Rich, Elizabeth A. McNamara, DAVIS WRIGHT TREMAINE LLP, New York, New York,

*Counsel for Defendant.*

### MEMORANDUM OPINION

March 30, 2026

BIBAS, *Circuit Judge*, sitting by designation.

Georgette Jones promised Sheila Richey that she would not disparage (or encourage anyone else to disparage) Sheila's late husband, George Richey. But a few years later, Sheila suspected that Georgette was breaking that promise while she helped

Showtime produce a TV show. So Sheila sued Showtime for unjust enrichment, claiming that it got a benefit from Georgette that properly belonged to her. I dismissed Sheila's claim once but gave her leave to amend. This time, her claim fares no better, and I now dismiss it with prejudice.

## I. SHEILA RICHEY SUES SHOWTIME

I previously detailed the allegations in this case. *See Richey v. Showtime Networks*, 2025 WL 843278, at *1–2 (D. Del. Mar. 18, 2025). So I do not belabor them here. In short, Georgette Jones, daughter of country music stars George Jones and Tammy Wynette, wrote a memoir. In the book, she portrayed Wynette's last husband, George Richey, negatively.

After Wynette died, Sheila married George Richey. Sheila sued Georgette over this portrayal. They settled the suit in 2019 after Georgette signed a non-disparagement agreement promising not to make statements, or "cause or encourage others to make" statements, that "defame, disparage, or in any way criticize" George Richey. D.I. 24-1 § 1.

Meanwhile, Showtime bought the rights to Georgette's book and based a TV series on it. Like the book, the show portrayed George Richey unfavorably. And because Georgette helped produce the show, Sheila sued. But instead of suing *Georgette* for breach, Sheila sued *Showtime* for unjust enrichment.

I dismissed Sheila's claim once before. *See generally Richey,* 2025 WL 843278. At the time, the parties had not briefed which state's law applied. Assuming that Delaware law applied, I concluded that Sheila had failed to state a claim. *Id.* at *3–5. But I gave her leave to amend. *Id.* at *5.

2

Sheila then filed an amended complaint. Second Am. Compl., D.I. 24. And Showtime again moved to dismiss. D.I. 39. This time, the parties briefed choice of law. But regardless of which state's law governs, Sheila has failed to state a claim. So I dismiss her claim, this time without leave to amend. As for Showtime's request for costs and attorney's fees, I deny that request without prejudice to renewing it after I enter judgment.

## II. EITHER NEW YORK OR NORTH CAROLINA LAW APPLIES

### A. Choice of law remains a live question

To start, Sheila argues that Showtime forfeited the right to contest choice of law. *See* D.I. 40 at 18–19. True, when I dismissed Sheila's previous complaint I applied Delaware law. But I did so only because the parties had not briefed the question. *Richey*, 2025 WL 843278, at *2. And I made clear that if Sheila filed an amended complaint and Showtime filed another motion to dismiss, I expected the parties to brief that question. *Id.* Both have done so. Neither party's earlier failure to brief choice of law foreclosed the question.

It is also true that when I denied Sheila's request for discovery on choice of law, I suggested that New York law would apply. *See* D.I. 37. But the law-of-the case-doctrine does not preclude revisiting that decision. *First*, the parties fully briefed choice of law. *Second*, as I will explain, I apply both New York and North Carolina law. *See Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) (holding that a district court must explain its reconsideration and ensure the parties are not prejudiced by reliance on that ruling).

3

**B. I need not resolve the choice-of-law question**

A federal court exercising diversity jurisdiction must apply the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Delaware follows the Restatement (Second) of Conflicts of Laws. *GlobalTranz Enters., Inc. v. PNC Bank, N.A.*, 2020 WL 3469114, at *3 (Del. Super. Ct. June 25, 2020).

Under the Restatement, an unjust-enrichment claim is governed by the law of the state with "the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflicts of Laws § 221(1) (1971). Relevant contacts include the place where the parties' relationship was centered; "the place where the benefit or enrichment was received"; "the place where the act conferring the benefit or enrichment was done"; the parties' locations; and the place of physical objects related to the claim. *Id.* § 221(2). When the parties have no relationship, the place where the benefit or enrichment was received is typically the most important. *Id.* cmt. d.

Showtime claims that New York law applies, while Sheila argues for Delaware or North Carolina law. D.I. 39 at 15–16; D.I. 40 at 12–15. I easily eliminate Delaware law: The state's only connection to the litigation is that Showtime is incorporated there. Second Am. Compl. ¶ 13. And the cases Sheila cites are inapt: one concerned applying the Delaware savings statute; the other, enforcement of a Delaware choice-of-law clause. D.I. 40 at 13 (citing *Reid v. Siniscalchi*, 2008 WL 821535 (Del. Ch. Mar. 27, 2008) and *Coface Collections N. Am. Inc. v. Newton*, 430 F. App'x 162 (3d Cir. 2011)).

Different facts favor application of the remaining states' laws. I previously focused on New York as Showtime's principal place of business, since that is where it got the money that it made from the show. D.I. 37. But a close reading of the complaint reveals that North Carolina may have a more significant connection to the parties and the litigation. Sheila's theory of the case is that Georgette gave Showtime the benefit of statements it used to create the show, and it would be unjust for Showtime to retain the profits from that show because Sheila owned the statements Georgette made. Second Am. Compl. ¶ 29 (claiming Georgette's statements in violation of the non-disparagement agreement "constitute information that belonged to … Sheila by virtue of" that agreement); ¶ 158 ("No tort claim would support a remedy that disgorges Showtime's substantial profits from its use of ill-gotten property."); *see also* D.I. 40 at 9, 17–18 (describing this case as one about "conversion," "the transfer of ownership," "Sheila's intangible assets," and "contractual entitlements"). While Sheila seeks Showtime's profits from the show, Georgette gave statements, not profits. So although the profits were received in New York, that does not make New York the place where Georgette conferred, and Showtime got, the benefit of Georgette's statements. Showtime got any benefit in North Carolina, where the show was primarily created. Second Am. Compl. ¶ 66; D.I. 40 at 14.

True, other allegations in the amended complaint suggest that New York has the closest relationship to the litigation and the parties. For example, Sheila alleges that Georgette was also involved in post-production, which happened in New York. Second

Am. Compl. ¶¶ 6, 100–04; *see also* D.I. 30-1 at 8, 11 (stating, in response to interrogatories, that post-production took place in New York but "Georgette made no substantive contribution" to it). So Showtime may have gotten some benefit in that state.

Ultimately, I need not determine whether North Carolina or New York law applies. Conflicts of law need to be resolved only where there is a true conflict: where the outcome would differ depending on whose law applied. And here, as I explain next, under either state's law Sheila's claim would fail. *See Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010).

### III. SHEILA FAILS TO STATE A CLAIM UNDER EITHER NEW YORK OR NORTH CAROLINA LAW

Under either state's law, Sheila's claim fails for the same basic reason: A plaintiff bringing an unjust-enrichment claim must have an interest in the benefit that was conferred. Yet Sheila has not shown an interest in anything that Showtime got from Georgette.

### A. Sheila needs to show an interest in the benefit conferred

To state a claim for unjust enrichment in New York, a plaintiff "must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 973 N.E. 2d 743, 746 (N.Y. 2012) (cleaned up). Courts have long made clear that a "cause of action for unjust enrichment" requires showing that defendant "should not have obtained or possessed [the benefit] *because it rightfully belongs to another.*" *Mente v. Wenzel*, 577 N.Y.S.2d 167, 169 (App. Div. 1991) (emphasis added); *see also Dell v. Chicago-Tribune NY News Syndicate*

*Inc.*, 264 N.Y.S.2d 878, 879–80 (App. Div. 1965) (per curiam) (rejecting unjust-enrich-ment claim because the plaintiff "had no property interest" in what the defendant published); *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 123 (S.D.N.Y. 2023) ("[A] party cannot maintain a cause of action in unjust enrichment unless the defendant received something of value which belongs to the plaintiff.") (cleaned up).

North Carolina imposes a similar requirement. There, the unjust-enrichment plaintiff must show that (1) a measurable benefit was conferred on the defendant, (2) the defendant "consciously accepted" that benefit, and (3) that benefit was not con-ferred gratuitously or "by an interference in the affairs of the other party." *JPMorgan Chase Bank, N.A. v. Browning*, 750 S.E. 2d 555, 559 (N.C. Ct. App. 2013) (internal quotation marks omitted). Courts have emphasized that the cause of action origi-nated in concerns about the fairness of allowing a "recipient to retain [benefits] with-out *the contributor* being repaid or compensated." *Id.* at 559–60 (internal quotation marks omitted). Even where the plaintiff did not directly confer the benefit, the ben-efit must still be something the plaintiff has a "better legal or equitable right" to than the defendant. *New Prime, Inc. v. Harris Transp. Co.*, 2012 WL 3192718, at *4–5 (N.C. Ct. App. Aug. 7, 2012) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 48 (2011)). The Restatement drives the point home: A "claim in restitu-tion" depends upon a right recognized by state law, not just evidence that "the claim-ant has been ill-treated, [or] that the third party's payment to the defendant … vio-lates rules of good faith, basic fairness, or common decency." § 48, cmt. i; *cf. Joseph*

*Saveri Law Firm Inc. v. Michael E. Criden, P.A.*, 759 F. App'x 170, 173–74 (4th Cir. 2019).

### B. Sheila alleges no interest in the benefit that Georgette conferred on Showtime

Recall the allegation at the heart of this case: Sheila says that Georgette conferred a benefit on Showtime by making statements and providing information that *Sheila* owned. Second Am. Compl. ¶¶ 29, 158. Her response to Showtime's motion centers this theory. *See* D.I. 40 at 15–18. And the sources she relies on expressly point to the right-or-interest requirement. *See id.* at 17 (citing §§ 47 and 48 of the Restatement and *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 260 (S.D.N.Y. 2012)).

But Sheila has not alleged a legal or equitable interest in the statements Georgette made to Showtime. She claims that the non-disparagement agreement gave her such an interest. Second Am. Compl. ¶ 29; *cf.* D.I. 40 at 9. But that argument is belied by the agreement's plain terms. To be sure, the agreement obligated Georgette to not disparage (or encourage others to disparage) George Richey, or to sue Sheila for defamation or similar torts. D.I. 24-1 § 1. But nothing in the agreement suggests that Georgette conferred upon Sheila a property interest in or entitlement to anything Georgette *said*.

To be sure, legal or equitable interests can be broad, covering, for instance, a con-tractual entitlement. *See* Restatement of Restitution, Ch. 5, Topic 1 introductory note; § 44 & cmts. a & b. But in such cases, the defendant is liable only if the plaintiff shows that the defendant committed some independent tort or violated some legal duty in manner that "constitute[d] an actionable wrong" against her. *Id.* § 44 & cmt. b. Yet

Sheila never advanced such a theory under New York or North Carolina law. Instead, she focuses on the elements of unjust enrichment and a property-based right to Georgette's statements. That misses the mark.

### IV. FOR NOW, I DENY SHOWTIME'S REQUEST FOR COSTS AND ATTORNEY'S FEES

Showtime argues that it is entitled to costs and attorney's fees under New York law. D.I. 39 at 22–27. Because Sheila does not argue that another state's law applies to this issue, I assume that New York law applies. Even so, I deny Showtime's request without prejudice.

#### A.  New York's law does not conflict with Rule 12(b)(6)

When a federal court exercises diversity jurisdiction, it applies state substantive law under *Erie*. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Berk v. Choy*, 146 S. Ct. 546, 552 (2026). But if a Federal Rule of Civil Procedure applies, the court "by-passes" the *Erie* question. *Berk*, 146 S. Ct. at 552. To determine whether a Federal Rule applies, the court "first ask[s] whether the Federal Rule 'answers the question in dispute.'" *Id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). If so, the rule "governs, unless it 'exceeds statutory authorization or Congress's rulemaking power.'" *Id.* at 552–53 (ditto).

Showtime claims entitlement to attorney's fees under New York's anti-SLAPP law. Under that law,

> A defendant in an action involving public petition and participation … may maintain an action … to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that: (a) costs and attorney's fees shall be recovered upon a demonstration … that the action involving public petition and participation was commenced or continued without a *substantial basis in fact*

*and law* and could not be supported by a substantial argument for the extension, modification or reversal of existing law.

N.Y. Civ. Rights Law § 70-a(1) (emphasis added).

Several federal courts have concluded that this provision of New York law does not apply in federal court because it conflicts with Rule 12. *See, e.g.*, *Coritsidis v. Khal Bnei Torah of Mount Ivy*, 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024) (collecting cases). Those courts reason that § 70-a requires applying the "substantial basis" standard to test the sufficiency of the complaint, and that this standard conflicts with Rule 12(b)(6)'s plausibility standard. *See, e.g.*, *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430–32 (S.D.N.Y. 2021). Sheila urges me to follow these decisions. D.I. 40 at 24–25. But I disagree with their premise, so I will not.

New York's anti-SLAPP law lets a defendant do two things. First, it gives a procedural mechanism to dismiss the complaint unless the plaintiff can show that his claim has a substantial basis in fact and law. *See* N.Y. C.P.L.R. 3211(g), 3212(h). Second, it gives the defendant a substantive right to costs and attorney's fees after showing that the plaintiff's claim lacks a substantial basis. *See* N.Y. Civ. Rights Law § 70-a(1). But the law does not dictate how the defendant must demonstrate that deficiency to get fees, nor does it condition fee recovery on dismissal under the anti-SLAPP mechanism. And Showtime has neither moved to dismiss under the special procedural provisions nor asked the Court to apply a non-Rule 12(b)(6) standard to Sheila's complaint in resolving its motion to dismiss.

So the only question here is whether Showtime is entitled to costs and attorney's fees if it shows that Sheila's complaint lacked a "substantial basis in fact and law and could not be supported by a substantial argument for" changing the law. § 70-a(1)(a). Nothing in Rule 12 "answers the disputed question." *Berk*, 146 S. Ct. at 552. So New York's law does not conflict with Rule 12 here. *See Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 183–84, 189 n.24 (S.D.N.Y. 2024) (reaching same conclusion); *cf. La Liberte v. Reid*, 966 F.3d 79, 87–89 (2d Cir. 2020) (holding California's anti-SLAPP statute inapplicable where it established a "special motion to strike" that required dismissal unless the plaintiff satisfied a higher standard than Rule 12(b)(6)'s and allowed re-covery only when the special motion succeeded). As a result, Showtime may invoke § 70-a(1)(a) to seek costs and attorney's fees without running afoul of Rule 12.

### B. I deny Showtime's request for costs and attorney's fees without prej-udice

So nothing in Rule 12 prevents Showtime from asking for costs and attorney's fees under § 70-a(1). But I must apply the procedures outlined in the Federal Rules. *See* Fed. R. Civ. P. 1; *Hanna v. Plumer*, 380 U.S. 460, 471–72 (1965). And Showtime's request tees up two further questions that implicate those Rules: whether Showtime can recover *costs* using New York law, and *when* and *how* it must request costs and fees. Rule 54(d) concerns both of those questions. As to the first, the Third Circuit has held that the costs guaranteed by that Rule prevail over a conflicting state provision. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995). So if the two approaches conflict, Rule 54(d) applies and caps the costs Showtime may get.

The second question is harder. Showtime claims that § 70-a(1)(a) lets it seek fees in a motion to dismiss. D.I. 39 at 23–24 & n.12 (collecting cases). But the state-court cases it cites do not interpret the text of the statute, which seems to foreclose such a request. The statute lets a defendant "maintain an action, claim, cross claim or counterclaim to recover damages … from" the plaintiff. § 70-a(1). That language suggests a separate proceeding or a parallel claim in the same litigation as the SLAPP suit, not a request piggybacked on a motion within that litigation. To be sure, one way the defendant can "demonstrat[e]" that the plaintiff's claim lacked a substantial basis is through "an adjudication pursuant to" the state's unique motion-to-dismiss mechanism for SLAPP suits. § 70-a(1)(a); N.Y. C.P.L.R. 3211(g). But reading these two provisions together suggests that proof is a two-step process, in which the dismissal motion is followed by a new proceeding or, in the same suit, a motion on the counterclaim. To be sure, "maintain" can mean "continue." *See Breuer v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 695 (2003). But that does not change the analysis here. Even if a defendant's motion to dismiss can be seen as a way of "maintaining" a plaintiff's suit—which is not a given—it strains the text to say that moving to dismiss the SLAPP suit counts as "continuing" an action or claim "to recover damages … from" the SLAPP plaintiff. So I hesitate to conclude that New York's highest court would adopt this reading. *But see Bobulinski,* 758 F. Supp. 3d at 188–89.

Depending on which reading of § 70-a(1) is right, the law may interact (and perhaps even conflict) with Rule 54. That Rule states that "[a] claim for attorney's fees … must be made by motion unless the substantive law requires those fees to be

proved at trial." Fed. R. Civ. P. 54(d)(2)(A). Assume that Showtime's request for fees, made as part of its Rule 12 motion, can itself be read as a motion. Rule 54(d) offers more procedural requirements for these motions—requirements that apply "[u]nless a statute … provides otherwise." R. 54(d)(2)(B). Those requirements include (1) filing the motion within fourteen days of entry of judgment and (2) "stat[ing] the amount sought or provid[ing] a fair estimate of it." *Id.* 54(d)(2)(B)(i), (iii).

And here is where the different readings of § 70-a(1) make a difference. If state law is a "statute" that "provides otherwise" for purposes of Rule 54(d)(2), and if Showtime's reading is correct, then Rule 54 instructs me to evaluate Showtime's request now. If Showtime's reading is wrong, then in any event I must follow the Federal Rule's post-judgment requirement.

The parties do not brief Rule 54 at all. They do not discuss whether a state statute can alter its procedural requirements—including the timing requirement. Nor do they discuss whether using New York law would exempt Showtime from disclosing, in its initial request, the amount sought (or an estimate). Granted, Sheila argues that Showtime's request is untimely—but she complains that it was brought *too late* under *New York* law. D.I. 40 at 21–22. I can find no support for this theory, in statutory text or caselaw, and it does not bear on Rule 54.

Ultimately, I need not decide this thorny issue. Showtime, in so many words, asks me to displace—maybe—a Federal Rule, but does not explain why I can. Whatever the interplay between Rule 54 and § 70-a(1), I see no state-law bar to addressing the merits of Showtime's fee request on a Rule 54 motion. So I deny Showtime's request

13

for now, without prejudice to renewing the motion in accordance with Rule 54(d). Should it do so, the parties are free to renew or make any new arguments about the statute, including whether a Rule 12(b)(6) dismissal satisfies the substantial-basis standard and whether this suit falls within the definition of an "action involving public petition and participation" provided in § 76-a(1)(a).

* * * * *

Sheila has not sought leave to amend. And because she has twice amended her complaint, and twice failed to state a claim, I would not grant leave anyway. So I dismiss her claim with prejudice.